**Richmond**

## Paul Andrew Cartwright

### v.

## Commonwealth of Virginia

March 12, 1982.

Record No. 810230.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson and Stephenson, JJ., and Harrison, Retired Justice.

*William P. Robinson, Jr. (Robinson, Eichler, Zaleski & Mason,* on brief), for appellant.

*Thomas D. Bagwell, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

The sole issue in this appeal is whether a single agreement to commit several crimes can support multiple convictions under our conspiracy statute.[1]

---

[1] Code § 18.2-22 reads in pertinent part:

  (a) If any person shall conspire, confederate or combine with another . . . to commit a felony . . . he shall be guilty of a felony which shall be punishable as follows:

    (1) Every person who so conspires to commit an offense which is punishable by death shall be guilty of a Class 3 felony;

    (2) Every person who so conspires to commit an offense which is a noncapital felony shall be guilty of a Class 5 felony; and

Paul Andrew Cartwright was formerly employed as a security guard at the General Foam and Plastics Corporation in Norfolk. While on the job, he learned that a driver of the Tidewater Macke Company, carrying a large sum of money, came to the plant each night to service the vending machines.

After he left General Foam's employment, Cartwright and his brother plotted to rob the Macke employee. On June 30, 1980, Cartwright went to the plant for a rehearsal. He talked to the guard on duty and to the driver. He aimed a gun at the driver and fired several blank cartridges, seemingly as a practical joke.

On July 14, Cartwright and his brother returned to the plant. While his brother waited in the car, Cartwright approached the plant gate with his gun drawn. In a few minutes he returned, apparently to leave the scene. At this point he was arrested by the Norfolk Police, who had the plant under surveillance.

In a statement to police, Cartwright outlined what he and his brother had planned to do:

[M]y intention was to knock the guard unconscious without being seen; if not possible, I was going to shoot him in the chest and lower abdomen.

The Macke man I intended to just take him around, play the part of a security guard, and when he got to the cafeteria . . . I was going to knock him unconscious and then kill him, and then I was going to remove the bullets from the body. I was going to carve them out with a knife that I brought with me for that purpose, and then I was going to load them in the vehicle, . . . and drive them out to the Knotts Island area and dispose of the bodies in the marsh.

Based on this and other evidence, Cartwright was convicted of three counts of violating Code § 18.2-22, that is, (1) conspiracy to commit murder of the guard; (2) conspiracy to commit capital murder of the Macke employee; and (3) conspiracy to commit robbery.[2] He was sentenced to 15 years imprisonment for conspir-

---

(3) Every person who so conspires to commit an offense the maximum punishment for which is confinement in the penitentiary for a period of less than five years shall be confined in the penitentiary for a period of one year, or, in the discretion of the jury or the court trying the case without a jury, may be confined in jail not exceeding twelve months and fined not exceeding five hundred dollars, either or both
. . . .

[2] Cartwright was also convicted of attempted robbery and use of a firearm in commission of a felony. These convictions are not at issue here.

acy to commit capital murder, 6 years imprisonment for conspiracy to commit murder, and 4 years imprisonment for conspiracy to commit robbery.

Cartwright argued below and contends here that he is guilty of but one conspiracy, that to commit robbery. He asserts that because there was but one agreement, there can be but one violation of the statute. The object of the agreement was to commit robbery and the two murders were merely "collateral necessities to insure the successful accomplishment of the original criminal enterprise of the robbery for profit."

■ We have held that a single criminal act can be a violation of more than one statute. *Martin* v. *Commonwealth,* 221 Va. 720, 723, 273 S.E.2d 778, 780 (1981); *Jones* v. *Commonwealth,* 208 Va. 370, 375, 157 S.E.2d 907, 910 (1967). Similarly, the Supreme Court has held that a single agreement can support convictions for violation of more than one conspiracy statute. *Albernaz* v. *United States,* 450 U.S. 333 (1981).

■ In *Albernaz,* the defendant conspired to import and distribute marijuana. He was found guilty of violating 21 U.S.C. § 963 and 21 U.S.C. § 846. The two sections contain identical language, but are found in different subchapters of the Comprehensive Drug Abuse Prevention and Control Act of 1970. The Court held the multiple sections evidenced Congressional intent to impose multiple punishments for a single conspiracy and the convictions therefore were in conformance with statutory and constitutional law.

Cartwright relies on *Braverman* v. *United States,* 317 U.S. 49 (1942). In *Braverman,* the defendant was convicted of multiple violations of 18 U.S.C. § 88. The convictions were based on a single agreement to violate several revenue laws. Unlike *Albernaz,* the statute was a general one, not directed toward conspiracy to commit a particular crime, but making illegal all conspiracies to commit crime. The Court held that under this statute there could be but one conspiracy conviction.

Our statute is similar to the one in *Braverman.* However, while Cartwright correctly states the holding of the case, he ignores the rationale. The controlling factor in both *Braverman* and *Albernaz* was legislative intent. Whether there was one statute or several was but evidence of the Congressional intent to impose multiple punishment. Our task, therefore, is to discern the intent of the General Assembly on this issue.

■ Conspiracy is defined as "an agreement between two or more persons by some concerted action to commit an offense." *Falden* v. *Commonwealth,* 167 Va. 542, 544, 189 S.E. 326, 327 (1937). Two reasons have been given for making such an agreement illegal. One is to punish the special dangers inherent in group criminal activity. *Lafave, W. & Scott, A., Handbook on Criminal Law* at 459 (1972). The second is to permit preventive steps against those who show a disposition to commit crime. *Id.*

■ We are aware that as a penal statute Code § 18.2-22 must be strictly construed against the Commonwealth.

> Yet that rule of construction does not abrogate the well recognized canon that a statute . . . should be read and applied so as to accord with the purpose intended and attain the objects desired if that may be accomplished without doing harm to its language. Any construction that has the effect of impairing the purpose of the enactment or which frustrates, thwarts or defeats its objects should be avoided.

*Gough* v. *Shaner, Adm'r.,* 197 Va. 572, 575, 90 S.E.2d 171, 174 (1955).

■ In enacting Code § 18.2-22, the General Assembly determined that all conspiracies are not the same. Conspiracies to commit more serious crimes are punished more severely. Here, Cartwright contends the two murders he planned were "collateral necessities" of the robbery and that he should not be punished for them. We cannot agree. To do so would encourage criminals to plan a number of crimes simultaneously, since only one conspiracy would exist. We do not believe the General Assembly intended this result.

Therefore, we hold that a single agreement can form the basis for multiple violations of Code § 18.2-22. An agreement to commit three crimes can form the basis for three convictions, each to be punished according to the severity of the criminal objective. To hold otherwise would impair the purpose of the statute and frustrate its objective. The judgment of the trial court will be affirmed.

*Affirmed.*