**Richmond**

WILLIAM JAMES POOLE, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 0196-87-2

Decided December 20, 1988

COUNSEL

Ronald L. Hicks, for appellant.

David A. Rosenberg, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—William James Poole, Jr., appellant, was convicted by a Fredericksburg Circuit Court jury of feloniously conspiring to distribute a Schedule II controlled substance in violation of Code §§ 18.2-248 and 256. On appeal, Poole raises the following issues: (1) whether the trial court properly admitted statements of the alleged co-conspirator; (2) whether the evidence was sufficient to prove a conspiracy; and (3) whether the trial court properly admitted the certificate of analysis performed on the drugs. For the reasons stated below, we reverse.

On May 1, 1986, at approximately 8:15 p.m., Officer Edward Latendresse of the Fredericksburg City Police Department was working undercover making controlled buys of narcotic drugs. While sitting in his car parked at the corner of Charles and Dixon Streets, he was approached by an unknown man who asked what he was looking for. Latendresse stated that he was looking for some "boat" or "loveboat," the street name for Phencyclindine (PCP). Over defense counsel's objection, Latendresse testified that the unknown man pointed across the street and said, "see that guy

over there wearing the blue pack, he's got the stuff, I'll be right back."[1] Officer Latendresse recognized the man with the pack as William (Butch) Poole; Latendresse. had seen Poole on two or three prior occasions and knew who he was. Latendresse testified that the runner went across the street, some fifty to sixty feet away, and stood face to face with Poole for approximately fifteen to twenty seconds. Latendresse stated that the two men stood one to two feet apart; they spoke and their hands came up and together for approximately three to five seconds. Latendresse could not see if their hands actually touched, whether anything was passed, or hear what was being said. The runner returned to the car and gave Latendresse a foil packet approximately one to one and a half inches long and a fourth to a half inch wide in exchange for fifteen dollars in police controlled currency.

Latendresse testified that the runner spoke only to Poole, that he had not seen anything in the man's hand before he returned from speaking to Poole, and that the runner's hands were at his side as he walked across the street and back.[2]

Upon receiving the foil packet, Latendresse placed it in his pocket and drove away. He did not see whether the runner went back over to where Poole was standing. Poole was arrested about one and a half hours later approximately one to two blocks from the corner of Charles and Dixon Streets. Poole did not have a pack at that time and the Commonwealth did not present evidence that Poole was in possession of the police-controlled currency.

On the night of the purchase, Latendresse placed the foil packet in a clear, plastic evidence envelope, sealed it with tape, initialed and dated it and gave it to Detective Martin who transported it to the crime laboratory in Richmond. A certificate of analysis, which was admitted over defendant's objection based on Code § 54-524.77:1, revealed .4 grams of marijuana coated with PCP, a Schedule II controlled substance.

Poole admitted to being on the corner that night with a gray backpack; however, he denied the incident described by Officer Latendresse. Poole also admitted that he had seen foil packets like

---

[1]  The man Officer Latendresse spoke to was never identified and was not available as a witness for trial.

[2]  Latendresse did state that Poole and the runner were standing on an angle and he could not see one of the runner's hands at one point.

the one purchased by Latendresse, and that he knew this corner had a reputation for being a place to buy and sell drugs.

Poole first contends that the trial court improperly admitted statements made by the alleged co-conspirator to Officer Latendresse. We agree.

"Conspiracy is defined as an '*agreement* between two or more persons by some concerted action to commit an offense.' " *Amato v. Commonwealth*, 3 Va. App. 544, 551, 352 S.E.2d 4, 8 (1987)(quoting *Cartwright v. Commonwealth*, 223 Va. 368, 372, 288 S.E.2d 491, 493 (1982))(emphasis added). In some circumstances "existence of an unlawful and inherently covert agreement can be inferred from . . . overt conduct." *United States v. Harris*, 433 F.2d 333, 335 (4th Cir. 1970). However, the proof must establish the existence of the agreement beyond a reasonable doubt. *Reed v. Commonwealth*, 213 Va. 593, 594, 194 S.E.2d 746, 747 (1973). Without more, mere "proof of overt acts in themselves is not sufficient, for it must be established that the conspiracy or agreement which is charged to have existed and which is the gist of the offense had been formed before and was existing at the time of the commission of [any] overt act or acts." *Harms v. United States*, 272 F.2d 478, 482 (4th Cir. 1959), *cert. denied*, 361 U.S. 961 (1960)(citations omitted).

Conspiracy may be established by circumstantial evidence; however, its existence must be proven by evidence independent of the co-conspirator's out-of-court statements. *See United States v. McCormick*, 565 F.2d 286, 289 (4th Cir. 1977), *cert. denied sub nom. Carter v. United States*, 434 U.S. 1021 (1978); *Floyd v. Commonwealth*, 219 Va. 575, 580, 249 S.E.2d 171, 174 (1978). "The general rule is that . . . a prima facie case of conspiracy [must be established] before the declarations of a co-conspirator, made out of the defendant's presence, may be admitted into evidence." *Floyd*, 219 Va. at 581-82, 249 S.E.2d at 175 (citations omitted). "Otherwise hearsay would lift itself by its own bootstraps to the level of competent evidence." *United States v. Gresko*, 632 F.2d 1128, 1131 (4th Cir. 1980)(quoting *Glasser v. United States*, 315 U.S. 60, 74-75 (1942)).

In *Floyd,* the defendant was charged with conspiring to commit grand larceny against his employer. Floyd assigned error to the trial court's ruling admitting into evidence statements made by

two co-conspirators. However, other evidence revealed that Floyd had met with the co-conspirators on several different occasions, had discussed ways of pre-billing to defraud his employer and had approved false invoices prepared and submitted by the co-conspirators. The Court held that this evidence was sufficient to establish a prima facie case of conspiracy, thereby making the statements of the co-conspirators admissible. 219 Va. at 583, 249 S.E.2d at 175.

Likewise, in *Gresko*, the Court held that there was ample evidence of a conspiracy independent of the co-conspirator's out-of-court statements. The appellants were charged with conspiring to obstruct justice by bribing a state official. The independent evidence consisted of payments and receipts of bribe money. This, the Court found, was sufficient and the out-of-court statements of the co-conspirators were admitted. 632 F.2d at 1131.

In *McCormick*, independent evidence of McCormick's participation in a conspiracy to distribute drugs was shown. An undercover agent observed McCormick meet with an informant on three different occasions to arrange drug purchases between McCormick and the undercover agent. The Court found this to be sufficient independent evidence of a conspiracy and admitted the statements of a co-conspirator. 575 F.2d at 289.

Unlike *Floyd*, *Gresko*, and *McCormick*, we do not believe that sufficient evidence was presented to establish a prima facie case of conspiracy independent of the alleged co-conspirator's out-of-court statements. The Commonwealth introduced no evidence, direct or circumstantial, to prove existence of an *agreement* between Poole and the unidentified man apart from the statements made by the unidentified man. The Commonwealth's independent evidence of a conspiracy consisted merely of testimony that two men met on a street corner for fifteen to twenty seconds and their hands came together in the air for three to five seconds. However, Poole testified that this is a common occurrence in the neighborhood and is nothing more than a means of greeting people. Furthermore, Officer Latendresse testified that he could not see if their hands actually touched, whether anything was passed between them, nor could he hear what was said. The fact that the two men met and spoke is insufficient to prove the existence of an agreement. *See Harms*, 272 F.2d at 482.

Officer Latendresse testified that, upon receiving the foil packet, he paid the runner with police-controlled currency. He then drove off and did not see if the runner and Poole met again. No evidence was introduced that when Poole was arrested one and a half hours later the police-controlled currency was in his possession. This fact undermines the Commonwealth's contention that the two men were conspiring to distribute drugs.

For these reasons, we hold that there was insufficient indepen-dent evidence to establish a prima facie case of conspiracy. There-fore, the out-of-court statements of the alleged co-conspirator were inadmissible. *Floyd*, 219 Va. at 581-82, 249 S.E.2d at 175. Furthermore, without the out-of-court statements of the alleged co-conspirator the remaining evidence is insufficient to prove a conspiracy and thus Poole's conviction cannot stand. Conse-quently, we do not reach the issue whether the trial court properly admitted the certificate of analysis performed on the drugs.

*Reversed.*

Benton, J., and Moon, J., concurred.