**Richmond**

RONALD E. WILLIAMS

v.

COMMONWEALTH OF VIRGINIA

No. 1484-88-3

Decided July 1, 1991

COUNSEL

Burton L. Albert (Kielkopf, Albert and Caldwell, on briefs), for appellant.

John H. McLees, Jr., Assistant Attorney General (Mary Sue Terry, Attorney General; Richard A. Conway, Assistant Attorney General, on brief), for appellee.

OPINION

**KEENAN, J.**—Ronald E. Williams appeals his jury conviction of seven counts of conspiracy to deliver marijuana to an inmate and one count of attempted delivery of marijuana to an inmate. He raises the following issues on appeal: (1) whether the trial court erred in failing to dismiss six of the seven conspiracy indictments because the evidence proved, at most, a single conspiracy to commit multiple deliveries of marijuana rather than seven separate conspiracies to deliver marijuana; (2) whether the evidence was sufficient to sustain the conviction of attempted delivery of marijuana; and (3) whether the indictments were fatally deficient in that Williams was charged pursuant to Code § 18.2-474.1 rather than Code § 53.1-203(9). Because we find that the evidence adduced at trial was sufficient to support a finding of guilt only with respect to two of the conspiracy indictments and the indictment

for the attempted delivery of marijuana, we reverse and dismiss Williams' convictions as to the remaining five conspiracy indictments.

## I.

Williams was indicted on seven counts of conspiracy to deliver marijuana to an inmate during the period of May 1, 1987 through July 11, 1987, and one count of attempted delivery on July 17, 1987. Throughout this time, Williams was an inmate at the Smith Mountain Lake Correctional Unit, Camp 24.

The evidence at trial showed that Deborah Locher, the wife of inmate Thomas Locher, agreed to bring marijuana to her husband in Camp 24. She spoke with Williams by phone and he told Deborah to pick up the marijuana at his mother's address. Deborah brought marijuana into the camp on four occasions beginning the first weekend in May. At the end of May, Deborah told her husband that she would no longer bring the marijuana to him. Tammy Barton, the girlfriend of inmate Jackie Smith, began bringing the marijuana in at that time. Deborah took Tammy to Mrs. Williams' home to introduce them. Tammy also spoke with Williams once to get directions to the house. Tammy brought marijuana to the camp between the end of May and July 17, 1987, at which time she was arrested.

Smith testified that he would give the marijuana to Thomas Locher, who in turn gave it to Williams. Smith and Locher jointly received one-quarter of an ounce of marijuana for each ounce brought into the camp. Smith testified that his agreement with Locher was that the women would bring the marijuana in every weekend. Smith also testified that at the beginning of June, Locher and Williams had an argument. As part of the reconciliation, the agreement between Locher and Williams changed so that the amount of marijuana brought in each weekend varied.

## II.

Williams' first argument is that the trial court erred in denying his motion to dismiss six of the seven conspiracy indictments on the ground that the evidence proved at most a single on-going conspiracy, not seven individual conspiracies. He argues that the separate indictments subjected him to multiple punishments for the same offense in violation of his fifth amendment rights.

■ Conspiracy is defined as "an agreement between two or more persons by some concerted action to commit an offense." *Cartwright v. Commonwealth*, 223 Va. 368, 372, 288 S.E.2d 491, 493 (1982) (quoting *Falden v. Commonwealth*, 167 Va. 542, 544, 189 S.E. 326, 327 (1937)). The existence of the agreement is the essence of the conspiracy offense. *Amato v. Commonwealth*, 3 Va. App. 544, 553, 352 S.E.2d 4, 9 (1987). Thus, " 'the Commonwealth must prove beyond a reasonable doubt that an agreement existed.' " *Zuniga v. Commonwealth*, 7 Va. App. 523, 527-28, 375 S.E.2d 381, 384 (1988) (quoting *Floyd v. Commonwealth*, 219 Va. 575, 580, 249 S.E.2d 171, 174 (1978)); *see also Poole v. Commonwealth*, 7 Va. App. 510, 513, 375 S.E.2d 371, 372 (1988).

In the case before us, we find that there is sufficient evidence to support the jury's finding that an agreement existed between Williams and at least one other person to distribute marijuana to an inmate between the dates of May 1, 1987 and May 10, 1987. Mrs. Williams testified that Williams called her from Camp 24 and told her that Deborah Locher would be picking up a package left at the house by an individual named John. Deborah testified that Thomas Locher called her from Camp 24 and asked her to bring a package of marijuana into the prison. After he gave her instructions over the phone, Locher put Williams on the phone and he gave Deborah instructions to his mother's home. Deborah picked up a package at Mrs. Williams' home and made the first delivery of marijuana to Thomas Locher at the end of April or the beginning of May 1987. The prison records received in evidence at the trial indicated that Deborah visited Thomas at Camp 24 on May 2, 1987. Thus, we find no error in the jury's verdict that Williams was guilty of conspiracy to deliver marijuana to an inmate during the dates of May 1, 1987 and May 10, 1987.

■ The next question we must address, however, is whether the Commonwealth presented sufficient evidence for the jury to find the existence of more than one agreement. The question of whether the evidence presented in a single trial establishes the existence of one conspiracy or multiple conspiracies is a factual issue for the jury's determination. *See United States v. Lozano*, 839 F.2d 1020, 1023 (4th Cir. 1988); *see also United States v. Alberti*, 727 F.2d 1055, 1059 (11th Cir.), *cert. denied*, 469 U.S. 862 (1984); *United States v. Rodriguez*, 509 F.2d 1342, 1348

(5th Cir. 1975). Thus, the jury's verdict may only be reversed if the evidence, as a matter of law, could not permit the jury to find beyond a reasonable doubt that several conspiracies existed. *See Alberti*, 727 F.2d at 1059 (citing *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982)). We believe that this is the proper standard to be applied in reviewing the question of whether the evidence is sufficient to sustain multiple conspiracies.

Applying this standard to the case before us, we find that there was sufficient evidence to support the jury's determination that an agreement existed between Williams and at least one other person to distribute marijuana to an inmate on June 6, 1987. Deborah testified that she refused to bring marijuana into the camp after she made a delivery on May 30, 1987. Jackie Smith testified that his girlfriend, Tammy Barton, started bringing the marijuana into the camp. Williams spoke with Tammy to give her directions to his mother's home. Deborah introduced Tammy to Mrs. Williams on June 5, 1987. At that time, Tammy picked up two packages of marijuana at Mrs. Williams' home and brought them to Smith at Camp 24. Smith would give the marijuana to Locher, pursuant to their agreement. On a number of occasions, Smith was present when Locher gave the marijuana to Williams, who in turn gave Locher and Smith their cut.

In addition, Smith testified that sometime in early June 1987, Thomas Locher and Williams had a fight. As a result, Thomas refused to continue bringing marijuana into the prison. Williams later apologized to Thomas. As part of the apology, Williams told Thomas that instead of the usual two ounces coming in every weekend, that sometimes it would be three. Thomas and Smith would continue to receive one-quarter of the marijuana brought into camp as their collective cut. On this record, we find that the jury's determination that the parties entered into a new agreement in early June is supported by the evidence.

The Commonwealth argues that the testimony of Deborah Locher conclusively establishes that each of the deliveries charged in the remaining indictments was also independent of any other. The testimony relied on by the Commonwealth was given by Deborah Locher, who recounted her conversation with her husband, Thomas. Her testimony was as follows:

We did not make plans, say we're going to do this for the next six weeks. We did it this time and it worked out okay and he said will you go back and do it again. And each weekend he'd say when are you going to pick it up, are you coming Saturday or are you coming Sunday?

Initially, we note that only three of the seven conspiracy indictments pertain to the time period during which Deborah Locher was bringing marijuana into the prison. The indictments alleging conspiracy on June 20, 1987, July 4, 1987 and July 11, 1987 did not involve Deborah Locher but rather Tammy Barton. Thus, Deborah Locher's understanding of her agreement with her husband is not pertinent to the issue of whether Williams was involved in multiple agreements to distribute marijuana to an inmate during the period following May 31, 1987.

We are also not persuaded that the Commonwealth's evidence is sufficient to prove beyond a reasonable doubt that Williams entered into multiple agreements to distribute marijuana to an inmate while Deborah Locher was bringing the marijuana into Camp 24. The Commonwealth's evidence showed that Williams had one conversation with his mother prior to Deborah picking up the marijuana at her home and one conversation with Deborah giving her directions to his mother's house. Deborah testified that she went to Mrs. Williams' home each weekend thereafter, for at least four weeks, and brought the marijuana to Thomas at Camp 24 every weekend except one. She also testified that she told Thomas at the end of May that she would no longer bring the marijuana into the camp, but agreed to introduce Tammy Barton to Mrs. Williams.

■ It is well settled in Virginia that "[w]henever the evidence leaves indifferent which of several hypotheses is true, or merely establishes some finite probability in favor of one hypothesis, such evidence does not amount to proof beyond a reasonable doubt." *Sutphin v. Commonwealth*, 1 Va. App. 241, 248, 337 S.E.2d 897, 900 (1985). Furthermore, "[a] conviction based upon a mere suspicion or probability of guilt, however strong, cannot stand." *Bridgeman v. Commonwealth*, 3 Va. App. 523, 528, 351 S.E.2d 598, 601-02 (1986). On the record before us, we find that the Commonwealth's evidence, including the testimony highlighted by the Commonwealth, creates no more than a suspicion that a sepa-

rate agreement was formed among the parties prior to each delivery by Deborah Locher to Camp 24. This evidence is insufficient as a matter of law to sustain Williams' convictions for conspiracy to distribute marijuana to an inmate during the period of May 10 through May 16, 1987 and May 21 through May 30-31, 1987. Accordingly, we reverse Williams' convictions on these indictments.

In addition, we find that the evidence was insufficient as a matter of law to establish that a separate agreement was reached between Williams and at least one other person prior to the deliveries on June 20, 1987, July 4, 1987 and July 11, 1987. Tammy Barton testified that after she began bringing the marijuana into Camp 24, Jackie Smith would remind her either by phone or letter to go by and pick up the package. She stated that Smith would write every day and would call two or three times a week. Barton testified that she would pick up two packages each week and bring one in on Saturday and one on Sunday. Smith testified that his agreement with Locher was that the marijuana would be brought into camp every weekend. Smith also testified that Barton brought marijuana into the camp approximately fifteen times. On this record, we find that the evidence was insufficient as a matter of law to establish beyond a reasonable doubt that a separate agreement was reached prior to the deliveries made by Barton on June 20, 1987, July 4, 1987 and July 11, 1987. Accordingly, we reverse Williams' convictions on these three indictments.

We disagree with the Commonwealth's argument that *Wooten v. Commonwealth*, 235 Va. 89, 368 S.E.2d 693 (1988), permits multiple conspiracy convictions stemming from a single agreement when the evidence establishes multiple deliveries of a controlled substance. In *Wooten*, although the Supreme Court upheld three separate conspiracy convictions arising from a single agreement, three different controlled substances were involved. The Court held that the defendant could be convicted of three separate offenses, explaining: "Conspiracies to commit more serious drug offenses are to be punished more severely. . . . To determine the applicable penalty in an agreement to distribute marijuana, cocaine and preludin, there must be reference to the penalty for each of the individual substantive offenses that are the objects of the conspiracy." *Id.* at 93, 368 S.E.2d at 695.

We do not find from this language any direction that a single agreement can give rise to multiple convictions where the substances distributed pursuant to that single agreement are the same. Rather, we believe that the Court's analysis and holding were predicated on the fact that different controlled substances were the subject of the same agreement and the punishment for the substantive offense was based on the type of controlled substance involved. For this reason, we find that *Wooten* is distinguishable from the case before us and does not alter our analysis here.

In light of our conclusion that the evidence was not sufficient to sustain Williams' convictions on five of the conspiracy indictments, we need not address his claim that separate convictions on each of these charges subjected him to multiple punishments for the same offense, in violation of his Fifth Amendment guarantee against double jeopardy. Further, since we find that the evidence supported the jury's determination that two distinct conspiracies existed, we reject his argument that he received multiple punishments for a single offense with regard to the remaining conspiracy indictments.

## III.

Williams' second argument is that the evidence is not sufficient to prove his guilt on the "attempt" indictment. Rule 5A:18 bars consideration of this issue on appeal. *See Mounce v. Commonwealth*, 4 Va. App. 433, 435, 357 S.E.2d 742, 744 (1987) ("a challenge to the sufficiency of the Commonwealth's evidence is waived if not raised with some specificity in the trial court"). Williams concedes that, at trial, he moved the court to strike the Commonwealth's evidence on all but the indictment alleging a conspiracy between the dates of May 1 and May 10, 1987 because the Commonwealth's evidence established only one ongoing conspiracy. Moreover, the record is clear that the motion to strike was limited to the conspiracy indictments. Williams argues, however, that although he did not specifically challenge the sufficiency of the evidence with respect to the "attempt" indictment, that this issue was preserved for appeal in his motion to set aside the verdict.

"A proper motion to set aside a verdict will preserve for appeal a sufficiency of the evidence question." *Brown v. Commonwealth*, 8 Va. App. 474, 480, 382 S.E.2d 296, 300 (1989).

Williams did not challenge the sufficiency of the evidence as to the attempt charge in his motion to set aside the verdict. Instead, he merely reiterated his objection to the convictions "on the grounds previously stated." Thus, we find that Williams did not preserve this issue for appeal.

Further, upon review of the record, we do not find that the ends of justice require us to consider this issue. *See Johnson v. Commonwealth*, 5 Va. App. 529, 532, 365 S.E.2d 237, 239 (1988); *Mounce*, 4 Va. App. at 436, 357 S.E.2d at 744. The record discloses that Tammy Barton was arrested on July 17, 1987 at the Smith Mountain Lake Correctional Center prior to visiting Jackie Smith. Marijuana was found on her person. In addition, the evidence was undisputed that Smith had in the past given the marijuana which Tammy brought into Camp 24 to Locher, who in turn gave it to Williams. No evidence was presented that any different course was planned for July 17, 1987. Accordingly, we find that no affirmative showing has been made that a miscarriage of justice occurred.

## IV.

■ Williams' final argument is that all of the indictments should have been dismissed because the Commonwealth elected to prosecute him pursuant to Code § 18.2-474.1 rather than Code § 53.1-203. He maintains that Code § 18.2-474.1 pertains to deliveries by non-prisoners to prisoners, while Code § 53.1-203 pertains to felonies committed by prisoners. Since Williams was incarcerated at the time of the offenses, he maintains that he should have been prosecuted under Code § 53.1-203.

Code § 18.2-474.1 provides in pertinent part:

Notwithstanding the provisions of Code § 18.2-474, any person who shall willfully in any manner deliver, attempt to deliver, or conspire with another to deliver to any prisoner confined under authority of the Commonwealth of Virginia . . . any drug which is a controlled substance . . . or marijuana, shall be guilty of a Class 5 felony.

Where the language of the applicable statute is clear and unambiguous, the court "must take the words as written and give them their plain meaning." *Diggs v. Commonwealth*, 6 Va. App. 300,

302, 369 S.E.2d 199, 200 (1988). Code § 18.2-474.1 specifically prohibits any person from conspiring with another to deliver a controlled substance to any prisoner. The term "any person" is clear and unambiguous and encompasses prisoners as well as non-prisoners. Thus, we find no error in the trial court's refusal to dismiss the indictments on this ground.

For the reasons stated, Williams' convictions for conspiracy to deliver marijuana to an inmate between May 1, 1987 and May 10, 1987, and on June 6, 1987, are affirmed. In addition, Williams' conviction for attempted delivery of marijuana to an inmate is affirmed. The remaining convictions are reversed and the indictments therein dismissed.

*Affirmed in part,*
*reversed and dismissed*
*in part.*

Koontz, C.J., Benton, J., Duff, J., and Moon, J., concurred.

Barrow, J., with whom Cole, J.,* Coleman, J. and Willis, J. join, concurring and dissenting.

I am unable to say the jury's verdicts were plainly wrong and without evidence to support them. If the jury chose not to believe the defendant and his accomplices who said there was only a single conspiracy, sufficient evidence was introduced to support the jury's verdicts of seven separate conspiracies.

The evidence was undisputed that on at least seven separate occasions between May 1, 1987 and July 11, 1987, packages of marijuana were picked up at the home of the defendant's mother and transported to an inmate in the correctional unit, who then gave the marijuana to the defendant in exchange for one-fourth of the marijuana. On June 20, July 4, and July 11, Tammy Barton brought the marijuana into the correctional unit and gave it to her boyfriend, an inmate. Previously, on May 2, 9, 16, and 30, Deborah Locher had picked up the marijuana and taken it to her husband who was an inmate. By telephone, she had obtained the address of the defendant's mother from the defendant. At trial,

---

* Judge Cole participated in the hearing and decision of this case prior to the effective date of his retirement on April 30, 1991 and thereafter by designation pursuant to Code § 17-116.01.

when asked what the arrangements were that she had with her husband, Deborah Locher said:

> We did not make plans, say we're going to do this for the next six weeks. We did it this time and it worked out o.k. and he said will you go back and do it again. And each weekend he'd say when are you going to pick it up, are you coming Saturday or are you coming Sunday.

Direct evidence of separate agreements was not necessary to permit the jury to find the existence of separate conspiracies. "A conspiracy may be proved by circumstantial evidence." *Wright v. Commonwealth*, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982). If two or more people act to pursue the same object, "one performing one part and the others performing another part so as to complete it or with a view to its attainment, a jury [may] be justified in concluding that they were engaged in a conspiracy to effect that object." *Amato v. Commonwealth*, 3 Va. App. 544, 552, 352 S.E.2d 4, 9 (1987).

If the jury did not believe the defendant and his accomplices, who asserted that these seven transactions were a single conspiracy, the jury was left with evidence that, on seven separate occasions, marijuana was delivered to the defendant in a correctional unit through the coordinated efforts of at least three other people. These circumstances were sufficient to permit the jury to conclude that each participant was "performing one part and the others [were] performing another part" of seven separate agreements among them to deliver marijuana to the defendant, a prisoner confined in a state correctional unit. Deborah Locher's testimony confirmed such a conclusion.

Although this evidence was not conclusive, it did not have to be. It was sufficient to support the separate convictions, if the jury believed it and did not believe the testimony of the other conspirators who contradicted it.

As the majority recognizes, "[w]hether the evidence . . . establishes the existence of one conspiracy or multiple conspiracies is an issue for the jury." *United States v. Lozano*, 839 F.2d 1020, 1023 (4th Cir. 1988). A jury's verdict should not be disturbed on appeal "unless it is plainly wrong or without evidence to support it." *Traverso v. Commonwealth*, 6 Va. App. 172, 176, 366 S.E.2d

719, 721 (1988).

In my opinion, the evidence sufficiently supported the jury's determination that seven separate conspiracies had occurred, and I would not disturb its verdicts. Therefore, although I concur with the majority that two of the verdicts should be affirmed, I dissent from its decision to reverse the remaining verdicts.[1]

---

[1] Having concluded that the evidence is sufficient to support the convictions, I need not address the Attorney General's contention that, under the principle expressed in *Wooten v. Commonwealth*, 235 Va. 89, 368 S.E.2d 693 (1988), even if each of the deliveries of marijuana was accomplished pursuant to a single agreement, multiple punishments are permitted for multiple violations of the narcotics conspiracy statute.