COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Beales and Senior Judge Annunziata
Argued at Salem, Virginia


AMANDA LUCILLE RAGAN
                                                    MEMORANDUM OPINION* BY
v.        Record No. 1429-12-3                      JUDGE RANDOLPH A. BEALES
                                                    NOVEMBER 19, 2013
COMMONWEALTH OF VIRGINIA


                 FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
                                C. Randall Lowe, Judge

          David Eddy for appellant.

          Alice T. Armstrong, Assistant Attorney General II (Kenneth T.
          Cuccinelli, II, Attorney General, on brief), for appellee.


        A jury convicted Amanda Lucille Ragan (appellant) of four counts of manufacturing

methamphetamine under Code § 18.2-248.03(A), four counts of conspiring to manufacture

methamphetamine under Code § 18.2-256, and one count of possessing precursors for

methamphetamine manufacturing under Code § 18.2-248(J).  Appellant was sentenced to 41

years imprisonment with 17 of those years suspended.  On appeal, appellant argues the evidence

at trial was insufficient to support a total of four convictions for manufacturing

methamphetamine and a total of four convictions for conspiracy to manufacture

methamphetamine.  Appellant also challenges those convictions on double jeopardy grounds.[1]

For the following reasons, we affirm all four of appellant's manufacturing convictions and affirm

in part and reverse in part as to the conspiracy convictions.

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Appellant does not challenge her conviction for possession of methamphetamine
manufacturing precursors on appeal.

I. BACKGROUND

Applying the established standard of review on appeal, we consider the evidence at trial "'in the light most favorable to the Commonwealth, as we must since it was the prevailing party'" in the trial court. Beasley v. Commonwealth, 60 Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004)). The pertinent events here involve three persons – appellant; her boyfriend, William Begley, III; and Amanda Wright, with whom Begley previously had a romantic relationship. Wright appeared at appellant's trial as a witness for the Commonwealth. Wright testified that she contacted Begley while she was a fugitive from the Tennessee justice system and that she and Begley began making and selling methamphetamine around the beginning of March 2011. Wright testified that she met appellant about a month later.

Wright testified that she and appellant had begun making methamphetamine together by May 2011, although at times Begley was also involved – such as when the three made methamphetamine in a car while traveling on the Gate City Highway in Washington County or when Wright would assist appellant and Begley in producing methamphetamine at motels where appellant and Begley were staying. Wright testified that she continued to make methamphetamine with appellant on several occasions until the two were arrested during the early morning hours of July 17, 2011.

"One-Pot" Method of Manufacturing Methamphetamine

At trial, Wright described the process by which she, appellant, and Begley made methamphetamine. This process, called the "one-pot" method, is the most common method for making methamphetamine in Virginia. Special Agent Brian Snedecker of the federal Drug Enforcement Agency provided a thorough explanation of the one-pot method for the jury at trial. Snedecker testified that this method is called "one-pot" because the necessary ingredients are

- 2 -

prepared in the same bottle – commonly a Gatorade bottle. The "one-pot" method is sometimes also called "shake-and-bake" because the ingredients are "cooked" by vigorously shaking the bottle with its cap attached and agitating the ingredients.[2] According to Snedecker, the necessary ingredients are crushed tablets of pseudophedrine, ammonium nitrate, lithium taken from inside a battery, "some kind of camping fuel" (usually "a Coleman fuel"), and some water.

Snedecker testified that shaking the bottle with these ingredients inside causes a chemical reaction that "almost looks like a rolling thunderstorm inside the bottle" because, when "lithium touches the water, it sparks in the bottle." Snedecker testified that this technique creates "a really severe fire hazard" and that the person preparing the methamphetamine must carefully loosen the bottle's cap and "burp" the contents to relieve the enormous pressure created inside the bottle. According to Snedecker, after the bottle is properly shaken and burped, the bottle has "sludge" on the bottom and "liquid" on the top.

Pertinent to this appeal, Snedecker testified, "[I]nside that liquid is *actual methamphetamine*" that is "[m]olecularly bonded to the Coleman fuel." (Emphasis added). He added, "If the cook was done properly, the methamphetamine molecules will be attached to the Coleman fuel molecules." Snedecker testified that the remainder of the process involves severing the molecular bond between the methamphetamine molecules and the Coleman fuel molecules during the "gassing phase," followed by extracting and then drying the completed methamphetamine crystals – which are then ready for use or distribution. According to Snedecker, the one-pot method of methamphetamine production creates such an extremely

---

[2] Special Agent Snedecker testified that this process is also called "cold-cook" because "there is no external heat used in this process." Instead, the act of vigorously shaking or agitating the contents inside the Gatorade bottle causes "an exothermic reaction" that "creates its own heat." Agent Snedecker added that "one-pot," "shake-and-bake," and "cold-cook" all "mean the same thing in this case."

hazardous environment that law enforcement officers must wear specialized suits when they investigate and decontaminate methamphetamine laboratories.

### Events of July 16-17, 2011

According to Wright's testimony, on the night of July 16, 2011, she met appellant at a motel parking lot and appellant drove her to another motel, the Evergreen Motel, where appellant and Begley were staying. Begley was in the motel room when appellant and Wright arrived, although Begley left about an hour later. In the room at the Evergreen Motel, appellant and Wright began preparing methamphetamine on adjacent beds. Appellant used some pseudophedrine pills that Wright had said that she would bring with her. Wright cooked and "gassed" her bottle of methamphetamine. Appellant cooked the ingredients in her Gatorade bottle but had not yet "gassed" the liquid methamphetamine that was still in the bottle when they learned that Begley, who was driving appellant's car, had been arrested. With a police officer's permission, Begley called and told appellant to retrieve her car from a nearby gas station. However, appellant and Wright did not immediately retrieve appellant's car. Instead, using Wright's car, they drove to a Wal-Mart and purchased aquarium tubing (which is used for "gassing" liquid methamphetamine) shortly after midnight on July 17, 2011.

After briefly returning to the Evergreen Motel room, appellant and Wright drove in the direction of appellant's car – but Wright's car was stopped by the police for having defective equipment and for a moving violation. Deputy Matthew Shelley, who conducted the traffic stop, testified at trial that he noticed several items in Wright's vehicle that were indicative of methamphetamine production – such as "a shopping bag with cold packs [of ammonium nitrate] that had been cut open and tubing," as well as a glass Pyrex dish that "contained a milky clear liquid that had a haze in it with white speckled chunks of stuff floating in it." During a subsequent search of Wright's car, the police recovered Wright's backpack, which had inside of

it two bottles that contained liquid and that appeared to have been used for "one-pot" methamphetamine production. Wright testified that these two bottles belonged to appellant and that she had stolen them from appellant's room in the Evergreen Motel.

During this encounter, the police also recovered a motel room key from appellant. Deputy Dewey Fulton, Jr. testified that appellant said that the key was from the Evergreen Motel, that she, Begley, and Wright all had been staying there, and also that "more stuff" could be found in the motel room. Deputy Fulton testified that the motel room's door was ajar when they arrived, but that he did not enter the room because he could see inside that "it was just so nasty." Instead, Deputy Fulton kept a safe distance and called "the meth cleanup crew" and other members of law enforcement, including Detectives Chris Parks and Kevin Widener.

Detective Parks was among those who put on a special suit, which must be worn while investigating and decontaminating a methamphetamine laboratory, and assisted in the retrieval of relevant evidence, including a bottle with liquid that contained methamphetamine. The liquid in that bottle, the liquid from the Pyrex dish recovered from Wright's vehicle, and the liquid from the bottles recovered from Wright's backpack were all chemically tested. Certificates of analysis admitted at appellant's trial indicated that these liquids all contained detectable amounts of methamphetamine and that these liquids all weighed between 66.2 and 110.2 grams.

During an interview with Detective Widener that took place during the early morning hours of July 17, 2011, appellant made several incriminating statements that are not challenged on appeal. Appellant told Detective Widener that she had purchased Sudafed (i.e., pseudophedrine) for Begley many times, that "over the last months" she and Begley "had made meth every day," and that her role was mainly to crush pseudophedrine pills. Appellant denied making methamphetamine with anyone else, including Wright.

- 5 -

II. ANALYSIS[3]

A. MANUFACTURING METHAMPHETAMINE

"The manufacture of drugs is strictly controlled" in Virginia. Stillwell v. Commonwealth, 219 Va. 214, 218, 247 S.E.2d 360, 363 (1978). Unquestionably, Virginia law classifies methamphetamine as a controlled substance in this Commonwealth. See Code § 54.1-3448(3) (classifying "[a]ny substance which contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers" as a Schedule II controlled substance). Thus, the unlawful manufacture of methamphetamine has long been prohibited in Virginia. See Spear v. Commonwealth, 221 Va. 450, 456, 270 S.E.2d 737, 740 (1980).

1. CODE § 18.2-248.03

In 2008, the General Assembly enacted Code § 18.2-248.03, which states:

> A. Notwithstanding any other provision of law, *any person who manufactures*, sells, gives, distributes, or possesses with intent to manufacture, sell, give, or distribute *28 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers is guilty of a felony* punishable by a fine of not more than $ 500,000 and imprisonment for not less than five nor more than 40 years, *three years of which shall be a mandatory minimum term of imprisonment to be served consecutively* with any other sentence.
>
> B. Notwithstanding any other provision of law, *any person who manufactures*, sells, gives, distributes, or possesses with intent to manufacture, sell, give, or distribute *227 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers is guilty of a felony* punishable by a fine of not more than $ 1 million and imprisonment for not less than five years nor more than life, *five*

---

[3] We disagree with the Attorney General's argument on brief to this Court that the appeal must be dismissed under Rule 5A:12(c)(1) because appellant's assignments of error are not clear and concise, but instead contain extraneous argument. While appellant's assignments of error could have been drafted far more concisely and clearly, dismissal of appellant's appeal is not an appropriate remedy here – especially given that the Commonwealth was able to understand appellant's assignments of error sufficiently enough to respond to her petition for appeal without raising any issue under Rule 5A:12(c)(1).

*years of which shall be a mandatory minimum term of imprisonment to be served consecutively* with any other sentence.

(Emphasis added).

In this case, appellant was charged with four counts of violating Code § 18.2-248.03(A). These four charges corresponded to the four liquid samples obtained by the police during the early morning hours of July 17, 2011. According to the certificates of analysis that were admitted at trial, all of these liquid samples contained a detectable amount of methamphetamine and all of the samples weighed at least 28 grams but less than 227 grams – i.e., the weight range discussed in Code § 18.2-248.03(A).

At trial, in response to appellant's motion to strike the four charges under Code § 18.2-248.03(A), the Commonwealth argued that the evidence established that each Gatorade bottle used for the one-bottle method of methamphetamine production was its "own little factory" for manufacturing purposes. Similarly, during closing arguments before the jury, the Commonwealth referred to "the evidence of four manufacturing bottles" and argued that there were "four methamphetamine labs" that separately produced substances containing methamphetamine that weighed 28 or more grams.

Finding that the evidence supported the Commonwealth's theory of prosecution, the jury convicted appellant of four offenses under Code § 18.2-248.03(A). Appellant now challenges these convictions on sufficiency of the evidence and double jeopardy grounds.

## 2. SUFFICIENCY OF THE EVIDENCE

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial

- 7 -

court," Riner, 268 Va. at 330, 601 S.E.2d at 574, "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)).  See also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008).  "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. at 319.

For purposes of appeal, appellant does not dispute that the evidence at trial was sufficient to find that she participated in manufacturing methamphetamine, in violation of Code § 18.2-248.03.  However, appellant contends that the record does not support four separate convictions for manufacturing methamphetamine under Code § 18.2-248.03(A).  Appellant asserts that the trial court "should have consolidated or dismissed three of the four counts" of manufacturing methamphetamine because she claims that the evidence established only one instance where she manufactured methamphetamine, i.e., her activities with Wright in the Evergreen Motel room on July 16-17, 2011.  In support of this assertion, appellant argues that the four liquid samples described in the certificates of analysis that contained a detectable amount of methamphetamine and weighed at least 28 grams cannot support four separate convictions under Code § 18.2-248.03(A).

The Supreme Court of Virginia has held that, in determining "when one offense ends and the next begins," Virginia's courts should determine "the gravamen of the offense" for which the defendant was convicted.  Baker v. Commonwealth, 284 Va. 572, 576, 733 S.E.2d 642, 644-45 (2012).  Thus, we must first consider, of course, the plain language of Code § 18.2-248.03(A) because "we are bound by the plain meaning" of that statute and must "apply the statute as

- 8 -

written." 1924 Leonard Rd., L.L.C. v. Van Roekel, 272 Va. 543, 553, 636 S.E.2d 378, 384 (2006). Applying the plain language of Code § 18.2-248.03(A), it is clear that manufacturing "28 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers" is the gravamen of the offense. Thus, the factfinder may conclude that an offense is complete under Code § 18.2-248.03(A) upon sufficient proof that 28 grams or more of *a substance or mixture containing a detectable amount of methamphetamine* (or its salts, isomers, or salts of its isomers) have been manufactured.

We now apply the gravamen of the offense found in the plain language of Code § 18.2-248.03(A) to the facts and circumstances of this case. Based on the record on appeal here, a rational factfinder certainly could agree with the jury that the certificates of analysis admitted at trial described four distinct substances prohibited under Code § 18.2-248.03(A) that were manufactured separately using the "one-pot" method. Special Agent Snedecker thoroughly described for the jury the details of this method (both procedurally and chemically), and his testimony reveals that the term "one-pot" describes this method of making methamphetamine especially well. Snedecker testified that the necessary ingredients for "cooking" methamphetamine are placed in a single container such as a Gatorade bottle. According to Snedecker, once the contents of the bottle are vigorously shaken, sufficiently agitated, and then properly "burped," a liquid rises to the top of the bottle. Significant to this appeal, Snedecker explained to the jury that this liquid contains "*actual methamphetamine*" molecules that are bonded to the Coleman fuel's molecules. (Emphasis added).

Here, the Commonwealth presented certificates of analysis describing four liquid samples that weighed at least 28 grams and that contained a detectable amount of methamphetamine. Based on Snedecker's testimony, a rational factfinder could conclude that evidence of each

liquid sample could support a separate conviction under Code § 18.2-248.03 because each liquid sample had *actual methamphetamine* molecules that were manufactured during the one-pot "cooking" process. This conclusion is entirely consistent with the gravamen of the offense prohibited under Code § 18.2-248.03(A), which is manufacturing 28 grams or more of "a mixture or substance containing a detectable amount of methamphetamine" (or "its salts, isomers, or salts of its isomers"). Thus, the jury here was certainly permitted to find that each of the four liquid substances described in the certificates of analysis – each containing a detectable amount of methamphetamine – supported a separate and distinct offense of manufacturing methamphetamine under Code § 18.2-248.03(A). See Baker, 284 Va. at 576, 733 S.E.2d at 644 (affirming all three of Baker's convictions for possession of a firearm by a convicted felon because "each is a separate and distinct act or occurrence of possession"); see also Spear, 221 Va. at 456, 270 S.E.2d at 740 (explaining that the offense of manufacturing methamphetamine is complete upon sufficient proof of manufacturing, with no further proof of intent required).

Moreover, a rational factfinder could reasonably conclude that appellant was responsible for the manufacturing of all four liquid substances containing a detectable amount of methamphetamine that were described in the certificates of analysis, either as a principal in the first degree or as a principal in the second degree. See Code § 18.2-18 (stating "every principal in the second degree . . . may be indicted, tried, convicted and punished in all respects as if a principal in the first degree"). Concerning two of these substances – one contained inside a Pyrex dish that was recovered during the traffic stop and another contained in a bottle recovered from the room at the Evergreen Motel – the jury could readily infer that these were the actual substances that appellant and Wright, sitting on adjacent beds, had made on the night of July 16, 2011 at the Evergreen Motel. Concerning the other two substances – which were contained in "one-pot" bottles that were recovered from Wright's backpack during the traffic stop – Wright

testified that she stole these bottles on the night of July 16, 2011 from the room in the Evergreen Motel where appellant and Begley had been staying. The jury was entitled to infer that these were bottles that appellant and Begley had prepared previously, especially given appellant's confession to Detective Widener that she had "made meth every day" with Begley.

Contrary to appellant's argument on appeal, there is credible evidence in the record to convict appellant of *four* separate and distinct offenses of manufacturing methamphetamine under Code § 18.2-248.03(A). See Code § 8.01-680. Accordingly, on this record, a rational factfinder could indeed convict appellant of violating Code § 18.2-248.03(A) four times beyond a reasonable doubt.

### 3. DOUBLE JEOPARDY

"The Double Jeopardy Clauses of the United States and Virginia Constitutions protect against multiple punishments for the same offense." Roach v. Commonwealth, 51 Va. App. 741, 748, 660 S.E.2d 348, 351 (2008). "In the single-trial setting, 'the role of [this] constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.'" Blythe v. Commonwealth, 222 Va. 722, 725, 284 S.E.2d 796, 798 (1981) (quoting Brown v. Ohio, 432 U.S. 161, 165 (1977)); see Stephens v. Commonwealth, 263 Va. 58, 62-63, 557 S.E.2d 227, 230 (2002). Assuming without deciding that appellant sufficiently preserved the double jeopardy challenge that she raises on appeal,[4] we hold that no such double jeopardy violation occurred here.

---

[4] On February 28, 2012 – months before trial – appellant's counsel filed a written motion to dismiss the indictments against appellant on the grounds, *inter alia*, that the indictments "are vague and ambiguous in regard to the time and place of the offenses and did not sufficiently "permit her to adequately prepare her defenses and to plead any judgment in the instant case as a bar *to any later proceedings* against her based on this same alleged offense in contravention" of the Double Jeopardy Clause. (Emphasis added). The trial court denied this motion without a hearing. The Attorney General contended at oral argument before this Court that appellant's pre-trial motion related to a different type of double jeopardy claim than appellant raises on appeal, which alleges multiple punishments entered for the same offense at a single trial.

The Supreme Court of Virginia explained in <u>Stephens</u> that "'the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" <u>Id.</u> at 63, 557 S.E.2d at 230 (quoting <u>Missouri v. Hunter</u>, 459 U.S. 359, 366 (1983)). The General Assembly enacted Code § 18.2-248.03 in 2008, and this statute specifically pertains to methamphetamine-related offenses such as manufacturing methamphetamine. Significantly, a conviction entered under Code § 18.2-248.03 expressly brings *a mandatory minimum sentence that must be served consecutively* with any other sentence imposed. Thus, the legislative intent behind Code § 18.2-248.03 is plain – to deter and punish certain prohibited acts, including the manufacturing of mixtures or substances containing a detectable amount of methamphetamine, through consecutive, mandatory minimum sentences.

This Court must interpret and apply Code § 18.2-248.03(A) in a manner that is consistent with the General Assembly's intent. <u>See</u> <u>Lee v. Commonwealth</u>, 253 Va. 222, 225, 482 S.E.2d 802, 804 (1997). It is well established, Snedecker testified, that the "one-pot" methamphetamine manufacturing brings a great risk of fire due to the enormous pressure created during the "one-pot" cooking process and also poses a severe environmental hazard to people who are near the methamphetamine laboratory. Each time the "one-pot" method is employed, anyone nearby is subjected to serious potential harm. Furthermore, the end result of the "one-pot" method (following the gassing and extraction phases) is methamphetamine that can be used or sold. Given how prevalent the "one-pot" method has become in Virginia, it would contradict the legislative intent found in the plain language of Code § 18.2-248.03 and would also violate common sense to construe this statute so leniently as to hold that the evidence here supports only one conviction under Code § 18.2-248.03(A).

---

However, we will assume without deciding for purposes of appeal that appellant's double jeopardy argument on appeal is preserved – especially given that the trial court considered (but ultimately rejected) this double jeopardy argument during the course of the trial. <u>See</u> Code § 19.2-266.2(B).

Here, the jury convicted appellant of manufacturing four such substances, all of which had a weight within the range set forth in Code § 18.2-248.03(A). Appellant's four convictions for manufacturing methamphetamine under Code § 18.2-248.03(A) were based on sufficient proof of separate and distinct acts of "one-pot" methamphetamine manufacturing. It is well established that a person's protection against double jeopardy is "not abridged if [the] accused is subjected to punishment for two offenses that are supported by separate and distinct acts." Roach, 51 Va. App. at 748, 660 S.E.2d at 351; see Stephens, 263 Va. at 63, 557 S.E.2d at 230 (holding that "the record demonstrates that each shot that the defendant discharged from his firearm was a separate, identifiable act"). Accordingly, we conclude that appellant "did not receive multiple punishments for the same offense." Stephens, 263 Va. at 63, 557 S.E.2d at 230.

### B. Conspiracy to Manufacture Methamphetamine

Appellant also challenges three of her four convictions under Code § 18.2-256 for conspiracy to manufacture methamphetamine on sufficiency of the evidence and double jeopardy grounds. Code § 18.2-256 states:

> Any person who conspires to commit any offense defined in this article or in the Drug Control Act (§ 54.1-3400 et seq.) is punishable by imprisonment or fine or both which may not be less than the minimum punishment nor exceed the maximum punishment prescribed for the offense, the commission of which was the object of the conspiracy.

"Conspiracy is defined as 'an agreement between two or more persons by some concerted action to commit an offense.'" Heacock v. Commonwealth, 228 Va. 397, 407, 323 S.E.2d 90, 96 (1984) (quoting Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982)).

Appellant concedes for purposes of this appeal that she conspired to manufacture methamphetamine and that the evidence on appeal is sufficient to support one conviction under Code § 18.2-256. However, she argues that she did not conspire to manufacture

- 13 -

methamphetamine four times. Specifically, appellant contends that the record does not establish more than one agreement to conspire to manufacture methamphetamine.

In Wooten v. Commonwealth, 235 Va. 89, 93, 368 S.E.2d 693, 695 (1988), the Supreme Court of Virginia held that "a single agreement can form the basis for multiple violations of [Code] § 18.2-256." See also Cartwright v. Commonwealth, 223 Va. 368, 372, 288 S.E.2d 491, 494 (1982) (holding that a "single agreement can form the basis for multiple violations of Code § 18.2-22," the general conspiracy statute). The Supreme Court in Wooten explained, "Otherwise, criminals would be encouraged to plot a number of drug-related crimes simultaneously, because only one conspiracy would exist. This could not have been the intention of the General Assembly." 235 Va. at 93, 368 S.E.2d at 695. Twice, however, this Court has interpreted the Supreme Court's holding to apply to cases where a single agreement formed the basis for multiple conspiracies involving *different* illegal drugs. See Williams v. Commonwealth, 12 Va. App. 912, 919, 407 S.E.2d 319, 324 (1991) (*en banc*); Bowman v. Commonwealth, 11 Va. App. 259, 266-67, 397 S.E.2d 886, 890 (1990).

As the Commonwealth made abundantly clear during a post-trial hearing on appellant's motion to set aside the verdicts, the Commonwealth in this particular case, however, *actually did* rely on the existence of a single agreement to support appellant's four convictions for conspiring to manufacture the same drug, methamphetamine, under Code § 18.2-256. At the post-trial hearing, the prosecutor asserted plainly and directly:

> The Commonwealth's theory at trial was the evidence supported that there was just one agreement to manufacture methamphetamine. I mean, that's all that we argued . . . there was one agreement. . . .

The prosecutor then reiterated that "the Commonwealth has never alleged that there were four independent agreements, just one."

- 14 -

Thus, the Commonwealth in this case conceded plainly to the trial judge that "there was just one agreement to manufacture methamphetamine." See Cofield v. Nuckles, 239 Va. 186, 194, 387 S.E.2d 493, 498 (1990) ("A party can concede the facts but cannot concede the law."). While the Attorney General certainly "may not be estopped from repudiating the earlier position erroneously taken by the Commonwealth's Attorney," In re Dep't of Corr., 222 Va. 454, 465, 281 S.E.2d 857, 863 (1981), the prosecutor's concession here must dictate the outcome of this particular issue on appeal in this case. The prosecutor's very broad concession establishes unambiguously which specific theory of the case was actually presented to – and considered by – the jury at trial in this matter.

In the trial court, the Commonwealth argued that appellant participated in four conspiracies to manufacture methamphetamine between May 1, 2011 and July 17, 2011. However, the record does not establish that the Commonwealth ever argued to the jury that anything more than a single agreement formed the basis for the four conspiracies. Indeed, the jury was not asked to consider whether appellant entered into more than one conspiratorial agreement because, by the prosecutor's own admission, *the Commonwealth did not believe that presenting such an argument to the jury was even necessary.* As the prosecutor noted at the post-trial hearing, "The Commonwealth's theory at trial was the evidence supported that there was just one agreement to manufacture methamphetamine." Even viewing the record of the proceedings at trial in the light most favorable to the Commonwealth (as we must since it prevailed below), nothing rebuts the prosecutor's own assertion that appellant was actually convicted of four conspiracies to manufacture methamphetamine based on a single agreement. See Williams, 12 Va. App. at 919, 407 S.E.2d at 324; Bowman, 11 Va. App. 266, 397 S.E.2d at 890. On appeal, we certainly cannot make a finding of multiple conspiratorial agreements that the jury in this case was never even asked to make.

We emphasize that our analysis and holding on this issue are "limited to the facts of this case." Epps v. Commonwealth, 47 Va. App. 687, 708 n.4, 626 S.E.2d 912, 922 n.4 (2006); see also Anderson v. Delore, 278 Va. 251, 259, 683 S.E.2d 307, 311 (2009); Memorial Hospital of Martinsville v. Hairston, 2 Va. App. 677, 682, 347 S.E.2d 527, 529 (1986). Furthermore, we do not hold – or even suggest – that more than one conspiracy to manufacture methamphetamine could *never* arise from conduct similar to that undertaken by appellant in this case. Criminal conspiracies have long been prohibited in order "to punish the special dangers inherent in group criminal activity" and "to permit preventative steps against those who show a disposition to commit crime." Cartwright, 223 Va. at 372, 288 S.E.2d at 493 (citation omitted). As the Supreme Court explained in both Cartwright and Wooten, the General Assembly certainly did not intend to limit prosecutions alleging multiple conspiracies when it enacted Code § 18.2-22 (the general conspiracy statute) and Code § 18.2-256 (the drug conspiracy statute). See Cartwright, 223 Va. at 372, 288 S.E.2d at 493; Wooten, 235 Va. at 93, 368 S.E.2d at 695.

However, based on the record of the proceedings in this specific case – including, most significantly, the Commonwealth's concession in the trial court that the jury never heard any argument "that there were four independent agreements, just one" – we must conclude that the evidence is insufficient to support a total of four convictions for conspiracy to manufacture methamphetamine under Code § 18.2-256. Three such convictions must be reversed and the indictments dismissed. Because we conclude that the evidence was insufficient to support a total of four convictions under Code § 18.2-256, we decline to address appellant's assignment of error challenging those four convictions on double jeopardy grounds, assuming without deciding that her double jeopardy argument was properly preserved below. See Keller v. Denny, 232 Va. 512, 516, 352 S.E.2d 327, 329 (1987) ("It is a well recognized principle of appellate review that

- 16 -

constitutional questions should not be decided if the record permits final disposition of a cause on non-constitutional grounds."); see also Williams, 12 Va. App. at 919, 407 S.E.2d at 324.

However, we affirm one of appellant's conspiracy convictions under Code § 18.2-256. As appellant herself recognizes, the evidence supports that conviction for conspiring to manufacture methamphetamine beyond a reasonable doubt.

### III. CONCLUSION

The record on appeal amply supports appellant's four convictions for manufacturing methamphetamine under Code § 18.2-248.03(A), which we affirm. The gravamen of that offense is manufacturing 28 grams or more of a mixture or substance containing a detectable amount of methamphetamine – and the evidence proved beyond a reasonable doubt that appellant participated in this illegal activity four times using the "one-pot" method for manufacturing methamphetamine. We reverse and dismiss three of appellant's four convictions for conspiracy to manufacture methamphetamine under Code § 18.2-256. However, we affirm the remaining conspiracy conviction because the evidence proved that appellant conspired to manufacture methamphetamine beyond a reasonable doubt.

Affirmed in part,
reversed and
dismissed in part.