COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Benton and Bray
Argued at Richmond, Virginia


SCOTT TRIBUZI, S/K/A
 SCOTT BRUCE TRIBUZI
                                    OPINION BY
v.  Record No. 1794-96-2     JUDGE JAMES W. BENTON, JR.
                                    JULY 22, 1997
COMMONWEALTH OF VIRGINIA

        FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
              Ernest P. Gates, Judge Designate

        William H. Parcell, III (Phillips, Webb &
        Wallerstein, P.C., on brief), for appellant.

        Steven A. Witmer, Assistant Attorney General
        (James S. Gilmore, III, Attorney General;
        Kimberley A. Whittle, Assistant Attorney
        General, on brief), for appellee.


        Scott Bruce Tribuzi was convicted of embezzling an amount of

money greater than $200 from his employer, the Richmond Memorial

Hospital, during the period of July 14, 1995 through July 17,

1995.  See Code § 18.2-111.  Tribuzi argues on appeal that (1)

the evidence was insufficient to support the conviction, and (2)

the evidence was insufficient to prove that venue was proper in

the Circuit Court of the City of Richmond.  For the reasons that

follow, we reverse the conviction and dismiss the indictment.

                              I.

        The evidence proved that Tribuzi was the Director of Support

Services at Richmond Memorial Hospital.  One of his duties was to

count the money the food service cashiers deposited into one of

the safes at the hospital.  Tribuzi shared this responsibility

with June Walton and Glenda Moody, both of whom also had access

to the safe.  After counting the money, a deposit slip would be completed and recorded.  The money would be placed into a bank bag and given to a member of the hospital's security staff for deposit.

Latina Thomas, one of the cashiers, testified that she worked as a cashier from July 14, 1995 through July 17, 1995.  Thomas testified that at the end of her shift she would count the money in the register, record the total on a "face sheet," and attach a register receipt to the face sheet.  The register receipt was used to "verify the information contained in the [face] sheets."  Although the amount indicated on the face sheet should match the amount reported on the cash register receipt, Thomas testified that the amounts sometimes differed.  The discrepancies on Thomas' sheets for the four days varied from one dollar to several hundred dollars.  Thomas could not explain the discrepancies.

Several other cashiers also testified that the cash register receipts and the face sheets often contained discrepancies.  One cashier testified that the cash register receipt attached to her face sheet contained no indication of the cash she collected.  She testified that at the end of her work shift she "counted what was in the register and [the register tape] didn't actually tell you how much you made."

Glenda Moody, the Cash Operations Manager for Nutrition Services, testified that she shared with Tribuzi the

responsibility for counting the money in the safe. Moody stated that the money was counted the morning after it was put in the safe and that the individual who counted the money would fill out a deposit slip and a cash register reconciliation sheet. Moody also testified that she and Tribuzi had discussed the cashiers' discrepancies in the past and that after Tribuzi ceased working at the hospital the discrepancies continued to appear.

Kenneth Taylor, the Director of Security, testified that he and his security staff had access to the safe where the cashiers deposited the money. Taylor stated that on July 20, 1995 he found the cashiers' face sheets pertaining to the period of July 14, 1995 through July 17, 1995 in the trash can in Tribuzi's office. Taylor also testified that $1,800 had been taken from another hospital safe after Tribuzi ceased working at the hospital.

Timothy Patterson, the Internal Auditor for the hospital, was involved in the investigation of Tribuzi conducted by the hospital. Patterson determined that for the days of July 14 to July 17, a discrepancy of $1,010 existed between the amount of money the cashiers reported and the amount of money deposited in the bank.

June Walton, a Department Supervisor, testified that she was with Tribuzi when he counted the money on July 17 and 18. Walton testified that she did not see Tribuzi do anything improper or illegal. She also testified that the amount reported on a

cashier's face sheet and the amount of money the cashier put in the safe would sometimes differ. She further testified that Tribuzi initially was given the responsibility to count the money "[b]ecause the variances [detected in the cashiers' reports] were coming so close together, that money looked like it was missing."

At the conclusion of the Commonwealth's evidence, Tribuzi moved to strike the evidence on the grounds that the Commonwealth failed to prove venue and that the evidence was insufficient to prove embezzlement beyond a reasonable doubt. The trial judge offered to allow the assistant Commonwealth's attorney to reopen the case-in-chief to offer evidence concerning venue. The assistant Commonwealth's attorney stated that venue had been proved and declined the opportunity. The trial judge overruled Tribuzi's motions.

Tribuzi testified that the discrepancy problems in the cashiers' reconciliations were long standing. He said that he had sought to identify "whether it was a cashier problem, a cash register problem, or a theft." He had attempted to correct the problems through in-service training.

Tribuzi denied embezzling money. He testified that he counted the money the cashiers deposited during the period of July 14, 1995 through July 17, 1995 and noticed large discrepancies. Tribuzi testified that he planned to discuss the problem with Moody when she returned from her vacation leave.

Tribuzi also testified that he routinely placed papers in

his trash can and that he "used [his] trash can as a filing system" until he was sure that the papers were no longer needed. He further testified that his office remained locked and that the security director was the only person who had a key to his office. He stated that the housekeeping staff could only enter his office when he was present.

At the close of Tribuzi's evidence, Tribuzi renewed his motions. The trial judge overruled the motions and convicted Tribuzi of embezzlement.

## II.

"To establish the statutory crime of embezzlement under Code § 18.2-111, it is necessary to prove that the accused wrongfully appropriated to [his] use or benefit, with the intent to deprive the owner thereof, the property entrusted to [him] by virtue of [his] employment or office." Waymack v. Commonwealth, 4 Va. App. 547, 549, 358 S.E.2d 765, 766 (1987) (footnote omitted). In addition, the following principles are applicable to cases, such as this case, that are based on circumstantial evidence:

> All necessary circumstances proved must be consistent with guilt and inconsistent with innocence. It is not sufficient that the evidence create a suspicion of guilt, however strong, or even a probability of guilt, but must exclude every reasonable hypothesis save that of guilt. To accomplish that the chain of circumstances must be unbroken and the evidence as a whole must be sufficient to satisfy the guarded judgment that both the corpus delicti and the criminal agency of the accused have been proved to the exclusion of any other reasonable hypothesis and to a moral certainty.

*　　*　　*　　*　　*　　*　　*

　　　　A bookkeeper cannot be held criminally
　　liable for embezzling funds merely because
　　the funds received had not been deposited
　　where there is an obvious lack of internal
　　control and where persons other than the
　　accused received funds and made some entries
　　in the accounts in the absence of a showing
　　that he converted the funds to his own use.

Webb v. Commonwealth, 204 Va. 24, 34, 129 S.E.2d 22, 29-30

(1963).

　　　The evidence proved that Tribuzi was not the only employee

who had access to the money in the safe.  The security staff had

access to the safe.  In addition, Glenda Moody testified that she

and June Walton, who were also responsible for counting the money

deposited by the cashiers, had access to the safe.  Thus, the

Commonwealth failed to disprove the reasonable hypothesis that

another individual who had access to the safe removed money from

the envelopes.

　　　The evidence also established that the information reported

by the cashiers contained numerous internal discrepancies.  The

total amount of money the cashiers reported often did not match

the amount reported on the receipts produced by their registers.

 To address this problem, Glenda Moody spoke to the cashiers to

"re[inforce] accuracy . . . and . . . to make sure they [weren't]

making errors in things like counting."  This evidence supports a

reasonable hypothesis that the amount of money the cashiers

actually placed into the envelopes did not match the amount of

money the cashiers reported on their face sheets.  Simply put,

the evidence failed to exclude the reasonable hypothesis that the discrepancy was caused by counting errors committed by the cashiers.

Based on this evidence, we hold that the Commonwealth failed to "overcome the presumption of innocence and establish [Tribuzi's] guilt beyond a reasonable doubt."  Id. at 34, 129 S.E.2d at 29.  Accordingly, we reverse the conviction and dismiss the indictment.[1]

Reversed and dismissed.

---

[1] Because we hold that the evidence was insufficient to support the embezzlement conviction, we need not address Tribuzi's contention that the evidence was insufficient to prove venue under Code § 19.2-244.  Tribuzi's argument that the evidence failed to prove that the alleged offense occurred in the City of Richmond raises an issue of venue and does not constitute an allegation that the circuit court lacked jurisdiction, or inherent power, to decide this case.  See Southern Sand and Gravel Co. v. Massaponax Sand and Gravel Corp., 145 Va. 317, 328, 133 S.E. 812, 815 (1926) ("'That the action is tried in a county other than that declared by statute the proper county for its trial does not go to the jurisdiction, and does not invalidate the judgment.'") (citation omitted); cf. Garza v. Commonwealth, 228 Va. 559, 565-66, 323 S.E.2d 127, 130 (1984) (stating that "all circuit courts have jurisdiction over all felonies committed in the Commonwealth").