# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Eugene Spence

July 23, 2001

Case No. CR00-4830

BY JUDGE MARC JACOBSON

Defendant Eugene Spence was indicted by the Grand Jury of the City of Norfolk on the charge that: "Between, on, or about August 21, 2000, in the City of Norfolk, Eugene Spence did embezzle U.S. Currency, having a value of $200 or more, belonging to McDonald's." After a bench trial, the matter was taken under advisement by this Court.

At the trial, Norman Williams, the owner of the McDonald's restaurant on Princess Anne Road in the City of Norfolk, Virginia, where the alleged embezzlement occurred, testified that Spence was employed as an assistant manager at the restaurant. As part of his duties as an assistant manager, on August 21, 2000, Defendant was responsible for and required to make the nightly deposit of the restaurant's revenue at the Bank of America branch located at 1916 Colley Avenue in the City of Norfolk. See Transcript of Proceedings, February 22, 2001, the Honorable Marc Jacobson (Transcript), p. 18, ll. 1-4, p. 26, ll. 18-19. Williams testified that as part of the process of making the deposit, Defendant was to remove the deposit bag from the restaurant safe, take it to the bank with the proceeds therein, drop it in the night depository, and return to the restaurant. See Transcript, p. 17, ll. 15-18.

Williams testified that, as a practice, managers who make deposits are required to count the deposit at the end of the day and enter a code into the computer, indicating which manager prepared the deposit and the amount of the deposit. *See* Transcript, p. 14, ll. 8-13. Williams indicated that the information stored in the computer can be printed out and that printouts are evaluated weekly to monthly to assure that all deposits have been made. *See* Transcript, p. 18, ll. 14-18.

Williams testified that he ran a computer printout of the deposit report for August 21, 2000, and the printout indicated that Defendant was responsible for making a deposit on that night and that Defendant had signed the document as being the depositor. *See* Transcript, p. 23, ll. 17-24. The amount listed for deposit on the document was $2,235.56. *See* Transcript, p. 24, ll. 4-6. At the end of the month, the deposits for August were examined according to the system Williams testified to at trial. *See* Transcript, p. 24, ll. 18-25. When the records were compared with the restaurant's bank statements for the month of August, Williams discovered that the amounts could not be reconciled. *See* Transcript, p. 25, ll. 2-3. Although Williams did not specifically testify that the August 21 deposit was not received by the bank, the parties have stipulated that the deposit in question was never recovered. *See* Transcript, p. 35, ll. 19-23.

Norma Fellhauser, who on August 21, 2000, was employed at the bank, testified that the deposit system at the bank consists of a drawer, which the depositor must use a key to open, wherein the deposit bag is placed and drops into a vault. *See* Transcript, p. 35, ll. 1-6. Fellhauser also testified that, when deposits are counted by the bank employees, the vault can only be opened in the presence of two staff members, who send the deposits to a separate department. *See* Transcript, p. 36, ll. 12-19. Tellers then process the deposits, listing the bags as they are counted. *See* Transcript, p. 37, ll. 4-9. Fellhauser testified that the bank records showed no McDonald's deposit for August 21, 2000. *See* Transcript, p. 38, ll. 5-10. Fellhauser testified that she was familiar with the restaurant's account but did not personally work that account herself. *See* Transcript, p. 38, ll. 21-22, p. 39, ll. 3-11. After testifying relative to the general procedures the bank employs to count deposits, Fellhauser was asked:

Q: What do you do throughout the day as to large deposits?

A: Well, on the sheet that says night deposits, we need to list the bags on there. The little slot that says OTC, over-the-counter, we check it. So if it's a night drop, there's a little check. And if it is an over-the-

counter that physically comes in and gives us a bag, we mark it as an over-the-counter bag.

Q: Same information each time?

A: The same information.

Q: When does this list end on a particular day?

A: Usually most come in around twelvish. So if any deposit came in after 12:00, we actually have to open, physically count the bag. But before 12:00, we can get it on the sheet and into the post bag to go.

Q: Now there's also a second list. What's on that?

A: Those are the old fashion deposit bags. They are orange, or they're gray, or they're blue that we have to — there is a key that we normally have to unlock those.

Q: What do you do with those?

A: We actually physically take everything out and count it.

Q: And you have the documents, so you know who the people are who did that?

A: Yes.

*See* Transcript, p. 37, l. 2, through p. 38, l. 4. Fellhauser was not asked who the individuals were that processed the deposits for August 21, 2000, did not testify as to any specific recollection she had of the deposit in question, and did not testify that she counted the deposits for that day. The parties stipulated that the testimony of a second teller would be identical to that of Fellhauser. *See* Transcript, p. 39, ll. 20-24.

The Commonwealth offered the testimony of Detective William Ross who investigated the instant charge. Ross testified that Defendant executed a standard Norfolk Police Department legal rights advice form, known as PD-381 form. *See* Transcript, p. 41, ll. 23-25, p. 42, ll. 1-6. Defendant made a statement to Ross, the admissibility of which was stipulated to by both Defendant and the Commonwealth. *See* Transcript, p. 41, ll. 15-17. Although

Ross did not testify that Defendant made any statement that could be considered a confession, he did testify that:

> A: . . . I basically told him he was down there on an embezzlement charge. I didn't go into specifics about it.
>
> Q: Did you say anything about it dealing with McDonald's?
>
> A: Not until it was over with and until he said he had worked for McDonald's.

*See* Transcript, p. 43, ll. 12-18.

In order to establish the crime of embezzlement, the Commonwealth must prove that the accused wrongly appropriated property to his or her benefit or use with the intent to deprive the owner thereof. *Nestle v. Commonwealth*, 22 Va. App. 336, 341, 470 S.E.2d 133 (1996). The property at issue must also have been entrusted to the accused by virtue of his or her employment or office. *Id.* Further, the requisite intent to deprive the owner may be inferred from all the facts and circumstances of the particular case. *Id.*, citing *Chiang v. Commonwealth*, 6 Va. App. 13, 17, 365 S.E.2d 778 (1988). In addition to establishing the elements of the crime at issue, the following principles apply to cases that are based entirely on circumstantial evidence, such as the one presently at issue.

> All necessary circumstances proved must be consistent with guilt and inconsistent with innocence. It is not sufficient that the evidence create a suspicion of guilt, however strong, or even a probability of guilt, but must exclude every reasonable hypothesis save that of guilt. To accomplish that, the chain of circumstances must be unbroken and the evidence as a whole must be sufficient to satisfy the guarded judgment that both the *corpus delecti* and the criminal agency of the accused have been proved to the exclusion of any other reasonable hypothesis and to a moral certainty.

*Tribuzi v. Commonwealth*, 25 Va. App. 289, 293, 487 S.E.2d 870, 872 (1997), quoting *Webb v. Commonwealth*, 204 Va. 24, 34, 129 S.E.2d 22, 29-30 (1963). If a fact is equally susceptible of two interpretations, one of which is consistent with innocence, the jury (fact-finder) cannot arbitrarily adopt the interpretation which incriminates the defendant. *Starke v. Commonwealth*, 116 Va. 1039, 1046-47, 83 S.E. 545, 547 (1914); *Williams v. Commonwealth*, 12

Va. App. 912, 915, 407 S.E.2d 319, 322 (1991) (holding that whenever the evidence leaves indifferent which of several hypotheses are true, or merely establishes some finite probability in favor of one hypothesis, such evidence does not amount to proof beyond a reasonable doubt).

In an unpublished opinion, the Virginia Court of Appeals has examined a case quite similar to the instant case in the context of the sufficiency of evidence. The Court considers the unpublished opinion because of the similarity to the case at bar and finds persuasive the rationale adopted in that case. In *Pettway v. Commonwealth*, 1998 Va. App. LEXIS 339 (Va. App. 1998), the defendant was employed as an assistant manager at a McDonald's restaurant. *Id.* a *1. One of Pettway's duties was to periodically deposit the restaurant's money at the bank. The restaurant owner required the defendant to place the deposit in a clear plastic bag and assign it a number. Prior to making the deposit the assistant manager was also required to record on a ledger the bag number, the deposit amount, and the deposit date. The deposit was then to be placed in the deposit box outside the People's Bank of Virginia. Approximately two days after each deposit, the bank would send a deposit slip to the restaurant's office manager. On August 9, 1996, the restaurant's office manager was reviewing the deposit slips when she discovered one was missing in the amount of $2,947. *Id.* The ledger indicated that this was to have been deposited on August 5, by the defendant. The bank subsequently informed the restaurant manager that the deposit was never received. *Id.* at *2.

In the *Pettway* case, the bank manager testified at trial and described the bank's normal procedures for receiving night deposits. She stated that the customer making a deposit must use a key to open the box and place the deposit inside, whereby the deposit drops through a chute into a large bin, and the door locks upon closing. *Id.* Two bank employees then remove the contents, count the money, and record the amount. *Id.* The trial court convicted the defendant of embezzlement. *Pettway*, 1998 Va. App. Lexis at *2.

On appeal, the Court of Appeals reversed, holding that the evidence was not sufficient to secure a conviction. The Court stated that "when evidence is equally susceptible of two interpretations, one of which is consistent with the innocence of the accused, the trier of fact cannot arbitrarily adopt that interpretation which incriminates the accused." *Id.* Specifically, the Court noted that the bank teller only testified regarding normal procedures used by the bank to process deposits. The Court also noted that the bank manager had no knowledge of what actually happened on the day in question, stating "[t]he Commonwealth failed to offer testimony from bank employees charged with

accepting and accounting for deposits made on August 5, 1996." *Id.* Finally, the Court noted that "[b]ecause those persons [the bank employees] also had access to any money that was deposited, the proof failed to establish a vital link in the handling of the funds." *Id.*

In the case at bar, Defendant is charged with embezzling the monies represented by the deposit in the amount of $2,235.56. The evidence before the Court in support of the charge is that the money to be deposited by Defendant was not received by the bank. Testimony was not elicited as to whether Defendant was actually at the bank that evening, but evidence was elicited to show that other people besides Defendant had access to the chute or bin in question, namely, the bank's tellers. No witness testified specifically that he or she handled the August 21, 2000, deposits, or that he or she specifically remembers the absence of the restaurant's deposit the following morning. As in the *Pettway* case, "[c]ircumstances of suspicion, no matter how grave or strong, are not proof of guilt sufficient to support a [guilty] verdict . . . beyond a reasonable doubt." *Hancock v. Commonwealth*, 21 Va. App. 466, 472, 465 S.E.2d 138, 141 (1995), *quoting Crisman v. Commonwealth*, 197 Va. 17, 21, 87 S.E.2d 796, 799 (1955).

While there may be suspicion, perhaps even a possibility of guilt, considering the evidence as a whole and the totality of the circumstances and the evidence, the evidence is not sufficient to support a verdict of guilty beyond a reasonable doubt.

The case is dismissed.