COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Kelsey and Petty
Argued at Richmond, Virginia

ALLEN WADE BRIGGS

                                            MEMORANDUM OPINION[*] BY
v.     Record No. 0730-13-2                 JUDGE D. ARTHUR KELSEY
                                               APRIL 8, 2014

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF COLONIAL HEIGHTS
Herbert C. Gill, Jr., Judge

Nathaniel A. Scaggs (Hill and Rainey Attorneys, on brief),
for appellant.

David M. Uberman, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

The trial court found Allen Wade Briggs guilty of embezzlement, in violation of Code

§ 18.2-111. On appeal, Briggs claims that the evidence was insufficient to prove his guilt. We

disagree and affirm.

I.

When presented with a sufficiency challenge on appeal, we review the evidence in the

"light most favorable" to the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578

S.E.2d 781, 786 (2003). This principle requires us to "discard the evidence of the accused in

conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to

the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth,

221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and internal quotation marks omitted).

In addition, our appellate review "is not limited to the evidence mentioned by a party in

trial argument or by the trial court in its ruling." Perry v. Commonwealth, 280 Va. 572, 580, 701

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

S.E.2d 431, 436 (2010) (quoting Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008)). Instead, "an appellate court must consider all the evidence admitted at trial that is contained in the record." Id.; see also Hamilton v. Commonwealth, 279 Va. 94, 103, 688 S.E.2d 168, 173 (2010).

So viewed, the evidence at trial proved that Briggs worked as a manager at ColorTyme, a rent-to-own store. The store owner conducted an audit and discovered that on March 18, 2012, store proceeds totaled $326 in cash. Contrary to store policy, however, no deposit was made to the store's cash register or bank account. Briggs was the only employee in the store that day.

Widening his investigation, the store owner also discovered that four customers complained that store employees were calling them for payments on their past due account balances, which had already been paid. Each of the four customers produced receipts issued by Briggs verifying that they had paid their accounts in full.

One customer purchased a bedroom set on February 8, 2012, and paid Briggs $481.50 in cash. She received in return a handwritten receipt for that amount. Another customer purchased a computer and paid Briggs $730 in cash on March 5, 2012. Briggs gave the second customer a handwritten receipt, which Briggs had signed, for that amount. A third customer bought tires, wheels, and a bedroom set. She paid Briggs $142.59 in cash (a final payment on a disputed balance) and received from him a "paid in full" notation on the receipt, which was also signed by Briggs. App. at 37. The fourth customer paid Briggs $222 in cash for a purchase and received from him a handwritten receipt, again signed by Briggs, verifying the payment.

The store owner testified that he audited the store's finances and discovered that none of these four payments had been properly accounted for or deposited in the store's bank account. Briggs had signed three of the four handwritten receipts, the owner added. The receipts given to these customers came from one of three receipt books with individual receipts in triplicate form.

All three books had disappeared by the time the owner began his investigation. As store manager, Briggs was responsible for maintaining the receipt books in his office desk.

An assistant store manager testified that, under store policy, cash received from customers would be deposited in the cash register. At the end of each day, all but $150 would be taken from the cash register and stored in a locked desk drawer located in a back office. Only he and Briggs had keys to the drawer. The following day, the cash from the drawer would be taken to the bank for deposit. The assistant manager further explained that cash payments were deposited into the store cash register, which would simultaneously print out a receipt. There was "no reason," he explained, to write a handwritten receipt for cash payments. Id. at 52. On several occasions, he noticed shortages in the closing cash tally and notified Briggs of the problem. Briggs said that "he would take care of it the next day." Id. at 55.

In a motion to strike, Briggs's counsel argued "that we just have lots of conflicting testimony. There were bits and pieces here; one person say[ing] this, one person saying that." Id. at 140. He claimed that Briggs's testimony was "unimpeached" and demonstrated that, among other things, he did not have "exclusive access" to the store funds. Id. at 140-41. Counsel also argued that the trial court should accept Briggs's testimony that "he never took any of this money" and that, because the store's record-keeping was a "mess," it was impossible to determine who did. Id. at 142. Rejecting these arguments, the trial court denied the motion to strike and found Briggs guilty of embezzlement.

## II.

On appeal, Briggs challenges the sufficiency of the evidence supporting his embezzlement conviction. His argument implicitly assumes a less-than-deferential standard of appellate review and a reconsideration of the facts in the light most favorable to the defendant. We take a different view, however.

In Virginia, the standard of appellate review is well settled. "An appellate court does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (emphasis omitted) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Rather, the relevant question is whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (internal quotation marks omitted). Consequently, "we are not permitted to reweigh the evidence," Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007), because appellate courts have no authority "to preside *de novo* over a second trial," Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004).

This deferential appellate standard "applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63-64 (2010); see also Clanton v. Commonwealth, 53 Va. App. 561, 566, 673 S.E.2d 904, 907 (2009) (*en banc*). Thus, a fact-finder may "draw reasonable inferences from basic facts to ultimate facts," Haskins, 44 Va. App. at 10, 602 S.E.2d at 406 (internal quotation marks omitted), unless doing so would "push into the realm of *non sequitur*," Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006) (internal quotation marks omitted).

In this case, a rational fact-finder could conclude that Briggs embezzled funds belonging to his employer. The trial court found the Commonwealth's witnesses credible. Their testimony proved that Briggs had received money directly from store customers on five separate occasions. None of that money ever made it into the cash register, the overnight pouch stored in the desk drawer, or the next-day bank deposits. On four of these five occasions, Briggs issued handwritten receipts instead of placing the funds in the cash register and providing a register-issued receipt. By doing so, Briggs avoided any register record of the payments. As the store

owner testified, all of the handwritten receipt books that contained the triplicate copies of the original receipts had mysteriously disappeared, and it was Briggs, the store manager, who had custody of and responsibility for these books.

Briggs rejects this narrative as a one-sided retelling of the story that ignores the conflicting testimony he presented on each of these factual points. Perhaps so, but an appellate court has a "duty to discard" contested evidence presented by the accused and to "regard as true all the credible evidence favorable to the Commonwealth." Wright v. Commonwealth, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954); see also Parks, 221 Va. at 498, 270 S.E.2d at 759.

> [W]hen "faced with a record of historical facts that supports conflicting inferences," a court reviewing the sufficiency of the evidence "must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

Harper v. Commonwealth, 49 Va. App. 517, 523, 642 S.E.2d 779, 782 (2007) (quoting Jackson, 443 U.S. at 326 ).[1] That remains true even if the defendant takes the stand to testify on his own behalf. Sitting as fact-finder, the trial court is "at liberty to discount" a defendant's "self-serving statements as little more than lying to conceal his guilt." Armstead v. Commonwealth, 56 Va. App. 569, 581, 695 S.E.2d 561, 567 (2010) (internal quotation marks omitted).

Briggs also contends that the evidence was entirely circumstantial. However, Briggs's possession of his employer's funds was proven by direct, not circumstantial, evidence. The four customers testified that they paid Briggs personally. He, not some other employee, physically received the money. The Commonwealth did rely on circumstantial evidence to prove that

---

[1] Accord Belew v. Commonwealth, 62 Va. App. 55, 64, 741 S.E.2d 800, 804 (2013); Sims v. Sims, 55 Va. App. 340, 348-49, 685 S.E.2d 869, 873 (2009); Carter v. Commonwealth, 54 Va. App. 700, 705 n.3, 682 S.E.2d 77, 80 n.3 (2009); James v. Commonwealth, 53 Va. App. 671, 679 n.2, 674 S.E.2d 571, 575 n.2 (2009); Clanton, 53 Va. App. at 571, 673 S.E.2d at 909; McEachern v. Commonwealth, 52 Va. App. 679, 687 n.3, 667 S.E.2d 343, 347 n.3 (2008); Coleman v. Commonwealth, 52 Va. App. 19, 22 n.1, 600 S.E.2d 687, 689 n.1 (2008).

Briggs never turned the money over to his employer. That inference was drawn from several circumstances: the conspicuous use of handwritten receipts in an apparent effort to avoid the cash register's automated record, Briggs's control and custody of the overnight pouch kept in the locked desk drawer, the absence of the funds in the bank deposits made on the days after Briggs received the funds, and the untimely disappearance of the receipt books that Briggs, as store manager, was responsible to maintain. These circumstances point to one very reasonable inference — Briggs kept the money.

We do not share Briggs's distrust of the circumstantial basis for this inference. "There is no distinction in the law between the weight or value to be given to either direct or circumstantial evidence." Muhammad v. Commonwealth, 269 Va. 451, 479, 619 S.E.2d 16, 31 (2005). Fact-finders instinctually take into account the totality of the circumstances and understand that no one circumstance should be "viewed in isolation." Id. at 479, 619 S.E.2d at 32. On appeal, we similarly appreciate that "[w]hile no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Id.; see also Brown v. Commonwealth, 54 Va. App. 107, 119, 676 S.E.2d 326, 332 (2009). This principle cuts across all issues of substantive criminal law, including embezzlement.[2]

Finally, Briggs argues on brief that two embezzlement cases, Webb v. Commonwealth, 204 Va. 24, 129 S.E.2d 22 (1963), and Tribuzi v. Commonwealth, 25 Va. App. 289, 487 S.E.2d 870 (1997), dictate a reversal here. We disagree.

---

[2] See Smith v. Commonwealth, 222 Va. 646, 650, 283 S.E.2d 209, 211 (1981) (favorably analyzing circumstantial evidence, which led to reasonable inferences of guilt, in the context of embezzlement); Ronald J. Bacigal, Criminal Offenses and Defenses 240 (2013-14 ed.) ("The proof that the accused did one of these acts [of embezzlement] can be circumstantial, but it must point unerringly to the accused.").

Webb held only that a "bookkeeper" cannot be found guilty of embezzlement "merely because the funds received had not been deposited where there is an obvious lack of internal control and where persons other than the accused received funds and made some entries in the accounts in the absence of a showing that he converted the funds to his own use." Webb, 204 Va. at 34, 129 S.E.2d at 30. We see this holding as an unremarkable restatement of the obvious: A bookkeeper, simply because he is the bookkeeper, cannot be presumed guilty of embezzlement without evidence that he actually embezzled the funds.

The same is true of Tribuzi. There, a hospital worker shared with several others the duty to manage the revenues of the hospital cafeteria. An accounting showed that some of these revenues were inexplicably missing. We held that the worker could not be presumed to be the thief because of the absence of any evidence that he actually took the money and failed to account for it. This was particularly true, we added, given that several workers handled the money and the internal accounting controls were known to be unreliable. Tribuzi, 25 Va. App. at 294, 487 S.E.2d at 872.

These cases do not represent, as Briggs suggests, rules of law requiring proof of "exclusive access" or reliable "internal controls" as preconditions to convicting a defendant of embezzlement, as if they served as *de facto* elements of the offense. See, e.g., Smith v. Commonwealth, 222 Va. 646, 650-51, 283 S.E.2d 209, 211 (1981) (noting that the decision in Webb "rested on broader grounds" than the mere fact that "others had access to the embezzled property and an opportunity to commit the crime"). Webb and Tribuzi focus on those circumstances because they were at the heart of the Commonwealth's theory of guilt. They were the primary circumstances of the prosecution's circumstantial case. It necessarily follows that the convictions could not stand if, as Webb and Tribuzi held, no reasonable fact-finder could find the circumstances of those cases strong enough to bear the weight of reasonable doubt.

This case is quite different.  Briggs was not simply a bookkeeper, tenuously assumed to be one of the usual suspects rounded up in cases of inexplicably missing funds.  Nor was he an employee who shared with his co-workers the duty of collecting funds, and, for this reason alone, unfairly presumed to be at least partly responsible for missing funds under their joint control.  The customers testifying at Briggs's trial said they paid *him*, not someone else, and the store owner and his assistant manager laid a credible factual foundation demonstrating that none of these funds were passed on to Briggs's employer.  Thus, unlike <u>Webb</u> and <u>Tribuzi</u>, the circumstances directly linked Briggs to specific funds received by him and, as the trial court could reasonably infer, kept by him.

III.

Because a rational fact-finder could find Briggs guilty of embezzlement beyond a reasonable doubt, we affirm his conviction.

<u>Affirmed.</u>